SEABOARD AIR-LINE RAILWAY *v.* COLLIER, *et al.*, ex'rs.

The trial judge correctly instructed the jury touching the liability of a railway
    company for killing stock running at large in a district in which the "fence
    law" was of force; and the finding against the defendant company was war-
    ranted by the evidence.

Submitted July 7, — Decided August 12, 1903.

Action for damages — appeal. Before Judge Lumpkin. Fulton
superior court. January 20, 1903.

*Brown & Randolph* and *Erwin & Erwin*, for plaintiff in error.
*J. N. Bateman* and *Westmoreland Brothers*, contra.

FISH, P. J. But two questions are presented for our determi-
nation in this case: (1) Did the evidence warrant a finding that
the railway company was liable in damages for the value of two
cows killed by the running of one of its trains? (2) Did the judge
of the court below err in giving instructions to the jury respecting
the legal duty devolving upon railway companies to observe proper
precautions against injuring stock running at large in a militia
district of this State wherein the "fence law" had been adopted
by popular vote?

A perusal of the evidence appearing in the record before us can
not justify any other conclusion than that the jury were war-
ranted in finding that the company's engineer might, had he main-
tained a diligent outlook, have seen the cattle in ample time to
have avoided injury to them.

The company introduced in evidence "a certified copy of the
minutes of the court of ordinary of Fulton county, Georgia, giving
the results of the election on the fence law in Peachtree and Buck-
head districts, in the said county, showing the law to have gone
into effect in 1883 and 1884." The purpose of this evidence was
to show that in the district wherein the cows were killed owners
of stock were under a legal duty to keep their stock within inclos-
ures, and not to allow the animals to roam at large. As the jury
was about to retire to make up a verdict, one of the members
thereof addressed the court, saying he "understood that it was be-
ing contended in the case, in the argument of counsel for plaintiff,
that the railroad company should have fenced in its right of way,"
and the "jury would like to know whether there was any law in

Georgia requiring the railroad company to fence in its right of way." To this inquiry his honor replied, " in substance, that there was no law in this State which required a railroad to fence its right of way; that no such specific duty was imposed on it; that the existence of a stock law in a district did not of itself operate to relieve a railroad from liability for killing stock, . . but that the existence of the stock law in any locality is a fact which the jury may consider in ascertaining the amount of care and diligence exercised by the parties, and in determining whether the railroad was liable or not, or the extent of such liability, if any; that the jury should look to the entire facts as disclosed by the evidence in determining what ordinary care required of the parties; and that the matter of a stock law or a fence or no fence could be considered by them, along with all the facts shown by the evidence, in determining the question of diligence or negligence, and whether ordinary care was or was not used." These instructions to the jury were certainly as favorable to the company as it had any right to demand or expect. We can not agree with its counsel that, as matter of law, ordinary care and diligence does not require a railway company to look out for and anticipate the presence of stock on its right of way through a county or district in which the "fence law" is of force. Indeed, the decisions rendered by this court in *Central Railroad* v. *Hamilton*, 71 *Ga.* 461, and in *Central Railroad* v. *Summerford*, 87 *Ga.* 626, afford a conclusive reply to this contention. *Judgment affirmed. By five Justices.*